UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FELIX ALBERTO BERNAL,

       Petitioner,

v.                        Case No:  2:14-cv-483-FtM-29MRM
                            Case No. 2:11-CR-119-FTM-29DNF
UNITED STATES OF AMERICA,

       Respondent.

_____

**OPINION AND ORDER**

This matter comes before the Court on petitioner's Motion
Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct
Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc.
#124)[1] filed on August 21, 2014.  The government filed a Response
in Opposition to Motion (Cv. Doc. #8) on December 9, 2014.  For
the reasons set forth below, the motion is denied.

**I.**

On November 23, 2011, a federal grand jury in Fort Myers,
Florida returned a two-count Indictment (Cr. Doc. #1) charging
petitioner and others in Count One with conspiracy to possess with
intent to distribute, and to distribute, 50 or more grams of
methamphetamine and 500 or more grams of a mixture with a

_____

[1]The Court will make references to the docket of the civil habeas
case as "Cv. Doc.", and will refer to the docket of the underlying
criminal case as "Cr. Doc."

detectable amount of methamphetamine; and in Count 2 with possession with intent to distribute, and distribution or aiding and abetting distribution of 5 or more grams of methamphetamine. On June 7, 2012, petitioner appeared before the Magistrate Judge for a change of plea hearing and entered a plea of guilty as to both counts without the benefit of a plea agreement. (Cr. Doc. #79.) On June 11, 2012, the plea was accepted and petitioner was adjudicated guilty of both counts of the Indictment. (Cr. Doc. #82.)

The Presentence Report set petitioner's Base Offense Level at level 34 based on an amount of methamphetamine involving at least 150 grams but less than 500 grams. Petitioner received acceptance of responsibility, reducing his Total Offense Level to 31, and a guideline range of 120 to 135 months based on his Criminal History Category of I. (Cr. Doc. #133.) On October 1, 2012, the Court sentenced petitioner to a term of imprisonment of 135 months as to each count, to be served concurrently with each other, followed by a term of supervised release. (Cr. Doc. #103.)

Judgment (Cr. Doc. #104) was filed on October 3, 2012. Petitioner filed a Notice of Appeal (Cr. Doc. #105), and raised two issues on appeal: (1) that the sentence was unreasonable because the district court failed to consider any 18 U.S.C. § 3553(a) factors, and (2) that petitioner's lack of candor was improperly considered in denying a safety-valve reduction. (Cr.

Doc. #121, p. 2.)  On May 10, 2013, the Eleventh Circuit affirmed the convictions and sentences.  United States v. Bernal, 518 F. App'x 800 (11th Cir. 2013).

On August 31, 2015, pursuant to a retroactive application of Amendment 782 of the U.S. Sentencing Guidelines, petitioner's sentence was reduced to the minimum mandatory 120 months, or time served, whichever was greater effective November 2, 2015.  (Cr. Doc. #143.)  Petitioner sought reconsideration, which was denied in light of the statutory minimum mandatory sentence of 120 months. (Cr. Doc. #147.)

Petitioner's motion under § 2255 was signed and executed on August 9, 2014.  Giving him the benefit of the mailbox rule[1], the motion was timely filed within one year of his conviction becoming final.  28 U.S.C. § 2255(f); Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002) (a petitioner "gets the benefit of up to 90 days between the entry of judgment on direct appeal and the expiration of the certiorari period.").

## II.

Petitioner asserts several grounds under the umbrella of two grounds for relief.  In Ground One, petitioner asserts ineffective assistance of counsel for the following reasons: (1) counsel's

---

[1] "[A] prisoner's pro se § 2255 motion is deemed filed the date it is delivered to prison authorities for mailing."  Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (citation omitted).

failure to argue a lack of evidence, and failure to investigate the charges; (2) counsel's failure to explain the plea agreement and charges, making the plea not knowing or voluntary; (3) counsel's failure to explain petitioner's exposure under the guidelines when entering pleas of guilty and making unfulfilled promises for a reduction. Petitioner also argues that counsel failed to object to the "false evidence and hearsay presented by the prosecutor" at sentencing with regard to the safety valve. In Ground Two, petitioner argues that his sentence was unconstitutional and unreasonable; that the Court failed to consider factors under § 3553(a); and that there was an insufficient factual inquiry as to the amount of drugs.

### A. Evidentiary Hearing Standard

A district court shall hold an evidentiary hearing on a habeas petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (citation omitted). However, a "district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous." Id. at 715. See also Gordon v.

United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (a hearing is not necessarily required whenever ineffective assistance of counsel is asserted).  To establish entitlement to an evidentiary hearing, petitioner must "allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance." Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015).  Viewing the facts alleged in the light most favorable to petitioner, the Court finds that the record establishes that petitioner is not entitled to relief, and therefore an evidentiary hearing is not required.

**B. Ineffective Assistance of Counsel Standard**

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established.  To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different.  Hinton v. Alabama, ___ U.S. ___, 134 S. Ct. 1081, 1087-88 (2014) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) and Padilla v. Kentucky, 559 U.S. 356, 366 (2010)).  "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a Strickland claim, a court need not address both Strickland prongs

if the petitioner fails to satisfy either of them." Kokal v. Sec'y, Dep't of Corr., 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).

The proper measure of attorney performance is simply reasonableness under prevailing professional norms considering all the circumstances. Hinton, 134 S. Ct. at 1088 (citations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. See also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (the Court looks to facts at the time of counsel's conduct). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010). Additionally, an attorney is not ineffective for failing to raise or preserve a meritless issue. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992); Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989).

## C. Knowing and Voluntary Guilty Plea Standard

"A guilty plea is more than a confession which admits that the accused did various acts." <u>United States v. Broce</u>, 488 U.S. 563, 570 (1989) (citations omitted). "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." <u>Id.</u> For this reason, the United States Constitution requires that a guilty plea must be voluntary and defendant must make the related waivers knowingly, intelligently and with sufficient awareness of the relevant circumstances and likely consequences. <u>United States v. Ruiz</u>, 536 U.S. 622, 629 (2002); <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985); <u>Henderson v. Morgan</u>, 426 U.S. 637, 645 (1976). A criminal defendant who has pled guilty may attack the voluntary and knowing character of the guilty plea, <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973); <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992), or the constitutional effectiveness of the assistance she received from her attorney in deciding to plead guilty, <u>United States v. Fairchild</u>, 803 F.2d 1121, 1123 (11th Cir. 1986).

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. <u>United States v. Mosley</u>, 173 F.3d 1318, 1322 (11th Cir. 1999). Relief from a Rule 11 violation

is available "only in the most egregious cases." <u>United States</u> <u>v. Dominguez Benitez</u>, 124 S. Ct. 2333, 2339 (2004).

### III. Ground One

In Ground One, petitioner asserts ineffective assistance of counsel because: (1) his attorney negotiated a plea agreement despite the lack of evidence on the charges he faced; (2) the guilty pleas were not knowing and voluntary because counsel failed advise him as to the elements of the offenses, and counsel failed to properly investigate the basis for the charges; and (3) counsel failed to argue that under the "corroboration requirement" the convictions cannot stand. (Cv. Doc. #2, p. 7.)

As a preliminary matter, petitioner's arguments based on errors related to counsel's negotiation of a written plea agreement will be denied because there was <u>no</u> plea agreement in this case, written or otherwise.[2]  Since there was no plea agreement to sign, translate, or explain to petitioner, and no appeal waiver at issue, these additional arguments made in Ground One (<u>id.</u>, pp. 7-12, 21)

---

[2] At the change of plea hearing, the Magistrate Judge stated:

> THE COURT: All right. This is without a plea agreement. Do either counsel -- are either counsel aware of any verbal promises or other representations not contained in writing that would have a bearing on this plea?

Both counsel for petitioner and the government responded:  "No, Your Honor".  (Cr. Doc. #130, 5:3-8.)  <u>See also</u> Cr. Doc. #133, ¶¶ 5, 101.

are not supported by the record and the motion will be denied as to these arguments.

**A. Factual Basis for Charges**

During petitioner's plea colloquy[3], the Magistrate Judge explained the nature of the charges, and each of the elements that the government would have to prove beyond a reasonable doubt for petitioner to be found guilty as follows:

> THE COURT: You've agreed to plead guilty to Counts 1 and 2 of the indictment. Count 1 charges you with conspiracy to possess with intent to distribute 50 or more grams of methamphetamine and 500 or more grams of a mixture or substance containing a detectable amount of methamphetamine. Count 2 charges you with knowingly and willfully possessing with intent to distribute and distributing and aiding and abetting the distribution of five or more grams of methamphetamine.
>
> . . .
>
> In order for you to be found guilty of Counts 1 and 2, the Government must prove several elements beyond a reasonable doubt. As to Count 1, there are four elements. As to Count 2, there are also four elements. The elements are as follows. As to Count 1, that two or more people in some way agreed to try to accomplish a shared and unlawful plan which was to possess with intent to distribute methamphetamine; secondly, that you knew the unlawful purpose of the plan and you willfully joined in it; three, that the object of the unlawful plan was to possess with intent to distribute and to distribute a quantity of methamphetamine; and four, that the weight of the controlled substance was at least 50 grams of actual methamphetamine.

_____

3 Petitioner was provided a certified Spanish interpreter during the change of plea hearing. (Cr. Doc. #79.)

> The elements as to Count 2 are, first, that
> you knowingly possessed methamphetamine;
> secondly, that you intended to distribute such
> methamphetamine; third, that the weight of the
> controlled substance was at least five actual
> grams of methamphetamine; and that you aided
> and abetted the possession and such
> distribution. Do you understand those
> elements?
>
> THE DEFENDANT: Yes.

(Cr. Doc. #130, 5:22-6:5; 12:10-13:5.) Petitioner then admitted
the factual basis for each element and each count before his pleas
of guilty were accepted. Petitioner initially only admitted what
he did in Atlanta, saying "[t]hat's it." (Id., 13:17-18.) As to
Count One, petitioner admitted that he delivered and sold illegal
drugs[4] in October or November 2011, and that co-defendant Eugenio
Bravo was the driver. (Id., 14:4-25.) Petitioner also agreed
that the total amount of drugs sold by him, and the co-defendants,
was 50 grams or more of what turned out to be Methamphetamine.
(Id., 17:21-25.) As to Count Two, petitioner eventually admitted
that he provided the Methamphetamine sold by his brother, and that
it was 5 grams or more. (Id., 18:16-19:15.) Even though
petitioner asserted that he had nothing to do with the actual drug
sale in Sarasota County, eventually petitioner admitted to the
following additional facts:

> THE COURT: You understand that while you say
> you had nothing to do with the drug sale in
> Sarasota County on October the 31st, while you

---

4 Petitioner denied knowing it was Methamphetamine in particular.
(Cr. Doc. #130, 13:23-14:1.)

may feel like you didn't, if you supplied the
methamphetamine to your brother that he sold,
then you would have aided and abetted him, so
you were involved. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: That's the only reason that I'm
willing to recommend that the plea of guilty
be accepted as to that count is because you've
told me that you supplied the methamphetamine.
Whether or not you came to Florida doesn't
matter. What matters is that you provided the
methamphetamine to your brother and he sold
it. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. And as to the conspiracy
count, which was Count 1, you've told me that
you were involved in November with the sale in
Atlanta. You've told me you supplied
methamphetamine to your brother on this
occasion, so you understand you were, by the
law, a co-conspirator; correct?

THE DEFENDANT: Yes.

(Id., 19:21-20:17.) With these facts established, and each

element addressed, the Magistrate Judge recommended acceptance of

petitioner's pleas of guilty as to both counts.

The record clearly establishes that the charges and the

individual elements of each Count were explained, petitioner's

liability as a co-conspirator explained, and that petitioner

admitted the necessary facts to establish his guilty for each

count. The record further establishes that the pleas were

voluntarily and knowingly entered into, and not as a result of any

promises, threats, or coercion. (Id., 20:25-21:7.) Petitioner

has established neither deficient performance by, nor prejudice resulting from, his attorney in connection with the guilty plea.

**B. Possible Penalties**

Petitioner argues that he was not fully apprised as to his exposure under the Sentencing Guidelines when entering the pleas of guilty, and counsel made promises that were not fulfilled with regard to reductions.  Petitioner also argues that counsel failed to object to testimony unfavorable to petitioner receiving a safety valve.  (Cv. Doc. #2, pp. 12-13, 16.)

During petitioner's plea colloquy, the Magistrate Judge described the charges, and informed petitioner of his possible sentences:

> . . .
>
> Count 1 carries a maximum sentence of a **mandatory minimum of 10 years up to life**, a term of supervised release of at least five years to life, a fine of up to $4 million, and a special assessment of $100.
>
> Count 2 carries a maximum sentence of **5 years mandatory minimum to a maximum of 40 years without parole**, followed by a term of supervised release of at least four years to life and/or a fine of up to $2 million, and a special assessment.
>
> Do you understand the penalties, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you and your attorney talked about how the Sentencing Commission guidelines might apply to your case?
>
> THE DEFENDANT: Yes.

(Cr. Doc. #130, 6:6-20.) The Magistrate Judge went on to explain the considerations that go into determining a sentence, and how no predictions could be made without additional information:

> THE COURT: **Are you aware that the sentencing guidelines allow the Court to take into account such factors as the actual conduct in which you engaged, any victim of your offense, the role that you played, whether or not you engaged in any obstruction of justice, and whether you've accepted responsibility for your acts, as well as other relevant factors?**
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you also understand your criminal history is an important factor in applying the sentencing guidelines?
>
> THE DEFENDANT: Yes.
>
> THE COURT: **The Court will not be able to determine a guideline range for your case until after a presentence report has been completed** and you and the Government have had an opportunity to challenge the facts reported by the probation officer in that report. It may be necessary for the Court to resolve disputed facts or matters contained in the report, and that also may affect the applicable guideline range to be applied in your case.
>
> At this point, **it is unlikely that your attorney can be specific as to a guideline range which will apply in your case. That's because he doesn't have all the necessary information yet. He hasn't seen the presentence report.**
>
> . . .
>
> THE COURT: Although the statutes under which you're charged set forth maximum as well as mandatory minimum sentences to be imposed, the Court will consult the sentencing guidelines as well as other relevant factors in

determining your actual sentence. At this time, **your sentence will be somewhere between 10 years to life**. Do you understand that?

THE DEFENDANT: Yes.

. . .

THE COURT: Very well. Mr. Bernal, do you understand the possible penalties which apply if you enter a plea of guilty to these charges?

THE DEFENDANT: Yes.

THE COURT: All right. Very well. Is there anything you want to ask me or ask your attorney that bears on your decision to plead guilty that we've not already covered this afternoon?

THE DEFENDANT: No, everything's okay.

(Id., 6:25-7:23; 8:7-14; 10:3-6; 20:18-22) (emphasis added).

The Magistrate Judge clearly informed petitioner that no accurate prediction could be made with regard to his sentence until such time as the presentence report was created and distributed, and that the potential sentence could be the minimum mandatory 120 months all the way up to life imprisonment. The record reflects that petitioner was not told anything different by counsel at the time the guilty pleas were entered. Further, the safety valve was not applicable until counsel prevailed on the argument at sentencing to eliminate an increase for petitioner's role as a supervisor or manager. The Court finds that the record establishes petitioner understood the nature of the charges, and that the pleas were made knowingly and voluntarily with the knowledge of the possible penalties. Accordingly, this argument

in Ground One of the motion is denied.

### C. Sentencing Hearing

At the sentencing hearing[5] on September 10, 2012, the Court sustained the objection of counsel regarding defendant's role as a supervisor or manager, and deleted a three-level increase. (Cr. Doc. #112, 38:17-22.) With this, petitioner qualified for application of a safety valve. Counsel requested a continuance to allow petitioner to provide a full debriefing, and possibly qualify for a safety valve. The request was granted, and sentencing was continued until October 1, 2012.

Petitioner was interviewed prior to this second sentencing hearing, but the case agent felt that petitioner was not truthful. Based on this opinion, the government's position remained that petitioner was not entitled to the safety valve. (Cr. Doc. #113, 5:8-11.) The sentencing court did not defer to the government's assessment, but held an evidentiary hearing.

The case agent testified that petitioner stated to him that he had only sold methamphetamine "twice, ever, in his lifetime", even though information to contrary was provided by other conspirators. (Id., 7:7-23; 17:23-18:7.) Co-conspirators and the confidential source all indicated otherwise, that defendant

---

5 The same certified interpreter was placed under oath and provided services in Spanish to petitioner. (Cr. Doc. #112, 3:14-22.) A separate interpreter was placed under oath to translate for witnesses. (Id., 6:19-7:6.)

was the supplier, and identified petitioner as Chiparro. (Id., 7:17-19; 8:10-13; 12:10-12.) During the safety valve interview with defendant, the case agent asked about a consent search conducted by the DEA on June 9, 2009, of his apartment where a gun, over $10,000 in cash, and chemicals for making methamphetamine were found. Petitioner denied knowing anything about the chemicals, even though they were in the kitchen, and it was "virtually impossible for him not to know that they were there." (Id., 16:7-17:9.)

Petitioner also testified, and denied knowing Anthony Merchant or Robert Trevino, or that they owed him money. Petitioner only admitted to knowing Barbara Trevino when he was caught. (Id., 22:20-23.) Petitioner also testified that he had sold his 2002 Jeep Cherokee to Jorge Beltran Carrion, who was pulled over at a traffic stop with a large sum of money, even though the vehicle was registered to petitioner. Petitioner testified that he kept the insurance on it as a favor while Carrion had it switched. (Id., 15:9-22; 24:6-21.)

Defense counsel cross-examined the case agent, and stood by petitioner's statements as being truthful and consistent with prior statements. Counsel also successfully argued that petitioner still qualified for a three level decrease for acceptance of responsibility, even if he was not given credit under the safety valve.

The Court finds that counsel's performance was not objectively deficient and did not cause prejudice to petitioner. After considering all the testimony, and providing counsel the opportunity to cross-examine the case agent, the Court found that petitioner was not truthful in providing all the information that he possessed with regard to the offenses of conviction, and denied the safety valve. This determination was not the result of ineffective assistance of counsel.

## IV. Ground Two

In Ground Two, petitioner argues that his sentence was unreasonable because: (1) the sentence was imposed in violation of Alleyne v. United States; (2) the sentence was harsh and unjust, and failed to properly consider factors under § 3553(a); and (3) there was an insufficient factual inquiry as to the amount of drugs attributable to petitioner. (Cv. Doc. #2, pp. 17-27.)

### A. Alleyne v. United States[6]

Liberally construed, petitioner argues that the finding that petitioner lacked candor at his debriefing was used to unconstitutionally increase his sentence because "any fact that increases the mandatory minimum is an "element" that must be submitted to the jury." Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013). This issue is without merit.

Under 18 U.S.C. § 3553(f)(5), for certain drug offenses, the

---

6 Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013).

Court shall impose a sentence "without regard to any statutory minimum sentence," if the Court finds that "defendant has truthfully provided to the Government all information and evidence." See also U.S. Sentencing Guidelines Manual § 5C1.2(a)(5). Whether a defendant qualifies for the so-called safety valve is a determination for the *Court*, and not a jury. United States v. Brownlee, 204 F.3d 1302, 1305 (11th Cir. 2000). "[T]here is no requirement in § 3553(f), or otherwise in the law, that the jury make findings beyond a reasonable doubt with regard to the five prerequisites for application of the safety valve." United States v. Poyato, 454 F.3d 1295, 1299 (11th Cir. 2006). Denial of safety valve consideration does not increase a defendant's statutory maximum sentence, so Alleyne has not applicability. The motion will be denied as Alleyne does not apply.

**B. Section 3553 Factors & Reasonableness of Sentence**

A § 2255 proceeding cannot be used to relitigate questions which were raised and considered on direct appeal. United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001). Therefore in most cases, prior disposition of an issue on direct appeal precludes further review in a subsequent § 2255 proceeding. Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994), cert. denied, 514 U.S. 1112 (1995). Similarly, where an issue which could have been raised on appeal is not pursued, it will not be considered in a § 2255

proceeding absent a showing of cause and actual prejudice from the errors of which he complains, or actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982); Mills, 36 F.3d at 1055. Cause for a procedural default may be established if petitioner can show that his attorney's performance failed to meet the Strickland standard for effective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986); Reece v. United States, 119 F.3d 1462, 1465 (11th Cir. 1997).

In this case, on direct appeal, petitioner raised two issues related to his sentencing including the failure to consider 18 U.S.C. § 3553(a) factors. The Eleventh Circuit rejected the argument:

> First, Bernal fails to show that his sentence was procedurally unreasonable. The court addressed each of Bernal's arguments regarding his sentencing and said that it had considered the policy goals and factors encompassed within § 3553(a). So although the court did not address each § 3553(a) factor, its acknowledgement that it had, indeed, considered all of these factors was sufficient. See [United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005), abrogated on other grounds by Rita v. United States, 551 U.S. 338 (2007)]. . . .

> Nor has Bernal demonstrated that his sentence was substantively unreasonable. To the extent that Bernal is objecting to the court's weighing of the § 3553(a) factors, his argument fails. First, the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court.

> _Clay_, 483 F.3d at 743.[7]  Moreover, Bernal's
> lack of candor at his debriefing and before
> the court was relevant to evaluating his
> "history and characteristics," and we will not
> second guess the district court's judgment
> regarding the appropriate weight to give a §
> 3553(a) factor.  _Snipes_, 611 F.3d at 872[8]; 18
> U.S.C. § 3553(a)(l). Because Bernal's sentence
> was within the applicable guideline range, we
> would ordinarily expect the sentence to be
> reasonable.  _Talley_, 431 F.3d at 788. Finally,
> Bernal's 135-month sentence (equivalent to
> 11.25 years) was substantially below the
> statutory maximums for both Counts One and
> Two, life and 40 years respectively, yet
> another indicator of reasonableness.  _See_
> _Gonzalez_, 550 F.3d at 1324.[9]

(Cr. Doc. #121, pp. 4-5.)  Also noted by the Eleventh Circuit,

there was no indicator that the sentence was unreasonable.  As the

Eleventh Circuit determined that the § 3553 factors were

considered, and the record reflects that the factors were

considered[10], this portion of the motion will be dismissed as

barred.

### C. Factual Basis for Drug Quantity

Petitioner argues that a specific threshold quantity of a

controlled substance must be treated as an element of the offense,

---

7 United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).

8 United States v. Snipes, 611 F.3d 855, 872 (11th Cir. 2010).

9 United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

10 The Court stated: "Mr. Bernal, the Court is required to impose
a sentence that is of sufficient, but not greater than necessary,
after considering all the factors identified in Title 18, United
States Code, Section 3553. The Court has considered all those
factors, whether we talk about them or not. (Cr. Doc. #113, 33:6-
10.)

charged in the indictment, and found beyond a reasonable doubt by a jury if the sentence exceeds the "maximum allowable". (Doc. #2, pp. 22-23.) The motion will be denied because the threshold amount of methamphetamine was in fact alleged in the Indictment, admitted during the change of plea hearing, and also admitted as to the facts in the Presentence Report.

The Indictment alleged a conspiracy involving 50 or more grams of methamphetamine, and 500 or more grams of a mixture or substance containing a detectable amount of methamphetamine in Count One, and 5 or more grams of methamphetamine in Count Two. (Cr. Doc. #1.) Petitioner was charged under 21 U.S.C. § 841(b)(1)(A)(viii) providing that if 50 grams or more of methamphetamine are involved, a person is subject to a term of imprisonment not less than 10 years, or more than life, and also under 21 U.S.C. § 841(b)(1)(B)(viii) providing that 5 grams or more subjects a person to a term of imprisonment not less than 5 years. (Id.) Petitioner pled guilty to both counts as charged in the Indictment. During the plea colloquy, petitioner admitted to both the 50 grams in Count One, and eventually to 5 grams or more in Count Two. (Cr. Doc. #130, 17:21-25; 19:5-15.)

Petitioner also admitted to the facts contained in the Presentence Report as follows: On October 14, 2011, the Drug Enforcement Agency (DEA) began using a confidential source to make weekly purchases of crystal methamphetamine for $1,500 per ounce

from Rene Bernal, petitioner's brother. Through conversations, it was determined that Rene Bernal answered directly to his brother, "the boss", who sent vehicles with hidden compartments containing methamphetamine from Atlanta to Southwest Florida. (Cr. Doc. #130, ¶¶ 16-17, 20-21.) On November 17, 2011, DEA agents met the confidential source who contacted petitioner for a meeting in Georgia. Eventually, petitioner produced a gift bag contained methamphetamine in exchange for $7,800 from the confidential source with the expectation that the remaining balance would be paid to his brother Rene Bernal as the agreed to price had been $9,000. Petitioner also indicated that he had already sent methamphetamine to his brother in Florida. (Id., ¶¶ 34, 46, 47, 48.) The conspiracy involved distribution of a total of at least 359.5 net grams of a mixture or substance containing methamphetamine or 256.10 net grams of actual methamphetamine between October 14, 2011, and November 17, 2011. (Cr. Doc. #133, ¶ 50.) Petitioner's range of imprisonment was 120 months to 135 months, and even after application of Amendment 782, petitioner's range of imprisonment could only be lowered to the statutory minimum of 120 months. Petitioner elected to plead guilty in this case. The motion will be denied as to this last claim.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #124) is **DISMISSED IN PART** and otherwise **DENIED** as set forth above.

2. The Clerk of the Court shall enter judgment accordingly and close the civil file. The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.** A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(citations and internal quotation marks omitted). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this ___12th___ day of April, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Petitioner
AUSA